UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

_____

| | | |
|---|---|---|
| JASON ANTHONY ROBINSON,<br>An individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  CIV-15-1243-HE |
| v. | ) | |
| | ) | Hon. Joe L. Heaton |
| TRIPLE R JANITORIAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to F. R. Civ. P. 56, Defendant Triple R Janitorial, Inc. moves for summary judgment of all Plaintiff's claims.  For the reasons set forth in its Brief in Support of this Motion, Defendant asks this Court to grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

MILLER JOHNSON
Attorneys for Defendant

Date:  August 12, 2016          By:  _/s/  Andrew A. Cascini_____

Anthony R. Comden (P44958)
Andrew A. Cascini (P76640)
45 Ottawa Avenue, S.W., Suite 1100
Grand Rapids, MI  49503
616.831.1700
comdent@millerjohnson.com
cascinia@millerjohnson.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
_____

| | | |
|---|---|---|
| JASON ANTHONY ROBINSON, | ) | |
| An individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  CIV-15-1243-HE |
| v. | ) | |
| | ) | Hon. Joe L. Heaton |
| TRIPLE R JANITORIAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>**

## Table of Contents

Page

Introduction ........................................................................................................... 1

Statement of Undisputed Facts ........................................................................... 2

Legal Standard ...................................................................................................... 8

Argument ............................................................................................................... 9

    A.    Plaintiff has abandoned all claims except two – a claim that he was discriminatorily denied lead pay because of his race or his sex, and a claim that he was harassed by his supervisors. ....................... 9

    B.    Defendant is entitled to summary judgment on Plaintiff's disparate wage payment claim because he has not established a prima facie case and because he cannot show pretext. ............................ 10

        1.    Plaintiff has not outlined a prima facie case that is legally sufficient to prove that Defendant denied him lead pay because of his race or sex. 11

            i.    Plaintiff cannot prove the first prong of his *prima facie* case for his sex discrimination claim. ................................................. 11

            ii.    Plaintiff cannot prove the second prong of his *prima facie* case for either his race or sex discrimination claims. ................... 13

            iii.    Plaintiff cannot prove the third prong of his *prima facie* case for either his race or sex discrimination claims. ........................... 13

        2.    Even if Plaintiff could prove his prima facie case, Defendant asserted a lawful, non-discriminatory reason that it denied him lead pay. ........ 16

        3.    Plaintiff cannot produce evidence that the Defendant's reason for denying him lead pay is pretext concealing an unlawful reason. ....... 17

        4.    Plaintiff failed to exhaust available contractual remedies regarding his allegation that Defendant denied Plaintiff lead premium pay. ........... 19

Table of Contents
(continued)

Page

C.      Plaintiff's harassment claim fails as a matter of law because he explicitly admits that the alleged harassment was not based on either his race or his sex. ......................................................................... 19

D.      Although Plaintiff has abandoned his claims that he was suspended or terminated because of his race or sex, Defendant is also entitled to judgment on these claims because Plaintiff cannot demonstrate discriminatory pretext. ................................................ 21

Conclusion ..................................................................................................................... 22

Index of Exhibits

Exhibit

1        Jason A. Robinson Deposition Transcript (excerpts)

2        Declaration of Lorenzo Henderson

3        Triple R / Union Collective Bargaining Agreement (excerpts)

4        Triple R Code of Conduct (excerpts)

5        Robinson Employment Application

6        October 2014 Race and Gender Report

7        9/24/14-10/7/14 Hour and Wage Record

8        12/24/14-1/7/15 Hour and Wage Record

9        4/24/15-5/7/15 Hour and Wage Record

10       5/8/15 Suspension Notice

11       Jennifer Kelley Witness Statement

12       Teresa Goolsby Witness Statement

13       5/27/15 Termination Notice

14       Employment Termination Form

15       Jason A. Robinson's EEOC Charge

16       EEOC Dismissal of Jason A. Robinson's EEOC Charge

17       *Chatfield v. Shilling Constr. Co.,* 1999 U.S. Dist. LEXIS 10134 (D. Kan. June 24, 1999)

18       *Andrews v. Cent. Parking Sys.,* 2009 U.S. Dist. LEXIS 115707 (Colo. D. Dec. 11, 2009)

19       10/8/14-10/23/14 Hour and Wage Record

Index of Exhibits
(continued)

<u>Exhibit</u>

20          *Kendrick v. Penske Transp. Servs.,* 1999 U.S. Dist. LEXIS 9918 (D.
            Kan. Apr. 13, 1999)

21          *Almon v. Goodyear Tire & Rubber Co.,* 2009 U.S. Dist. LEXIS 44169
            (D. Kan. May 20, 2009)

<u>Index of Authorities</u>

<u>Page</u>

## Cases

*Adamson v. Multi Cmty. Diversified Servs.,*
    514 F.3d 1136 (10th Cir. 2008) ................................................................. 12

*Almon v. Goodyear Tire & Rubber Co.,*
    2009 U.S. Dist. LEXIS 44169, at *18-19 (D. Kan. May 20, 2009) ............................. 18

*Andrews v. Cent. Parking Sys.,*
    2009 U.S. Dist. LEXIS 115707, at *30-31 (Colo. D. Dec. 11, 2009) ......................... 11

*Antonio v. Sygma Network, Inc.,*
    458 F.3d 1177, 1183 (10th Cir. 2006) ........................................................ 17

*Argo v. Blue Cross & Blue Shield of Kan., Inc.,*
    452 F.3d at 1201 (10th Cir. 2006) ........................................................ 12, 17

*Barlow v. C. R. England, Inc.,*
    703 F.3d 497, 505 (10th Cir. 2012) ...................................................... 11, 13

*Bolden v. PRI, Inc.,*
    43 F.3d 545, 551 (10th Cir. 1994) ........................................................... 20

*Buenrostro v. Potter,*
    176 Fed. Appx. 828 (9th Cir. 2006) .......................................................... 10

*Burlington N. & Santa Fe Ry. Co. v. White,*
    548 U.S. 53, 68 (2006) ...................................................................... 20

*Chatfield v. Shilling Constr. Co.,*
    1999 U.S. Dist. LEXIS 10134, at *1 fn. 1 (D. Kan. June 24, 1999) ........................... 10

*Cooks v. Potter,*
    109 Fed. Appx. 810, 812 (7th Cir. 2004) ..................................................... 21

*EEOC v. Horizon/CMS Healthcare Corp.,*
    220 F.3d 1184, 1191 (10th Cir. 2000) ........................................................ 11

*Estate of Bassatt v. Sch. Dist. No. 1,*
    775 F.3d 1233, 1233 (10th Cir. 2014) ........................................................ 18

*Franke v. ARUP Labs, Inc.,*
   390 Fed. Appx. 822, 826 (10th Cir. 2010)...................................................21

*Harrison v. Eddy Potash, Inc.,*
   248 F.3d 1014, 1022 (10th Cir. 2001) .........................................................19

*Hill v. Steven Motors, Inc.,*
   97 Fed. Appx. 267, 278 (10th Cir. 2004)......................................................13

*Kendrick v. Penske Transp. Servs.,*
   1999 U.S. Dist. LEXIS 9918 (D. Kan. Apr. 13, 1999)..................................18

*Kendrick v. Penske Transp. Servs., Inc.,*
   220 F.3d 1220, 1230 (10th Cir. 2000) .........................................................11

*Milton v. Scrivner, Inc.,*
   901 F. Supp. 1541 (W.D. Okla. 1994).........................................................19

*Notari v. Denver Water Dep't,*
   971 F.2d 585, 588 (10th Cir. 1992) .............................................................12

*Powell v. Nunley,*
   682 F. Supp. 2d 1260, 1263 (W.D. Okla. 2010)..............................................8

*Riggs v. Airtran Airways, Inc.,*
   497 F.3d 1108, 1117 (10th Cir. 2007) .........................................................15

*Ross v. Jefferson County Dep't of Health,*
   701 F.3d 655, 661 (11th Cir. 2012) .............................................................10

*Sandoval v. Boulder Reg'l Communs. Ctr.,*
   388 F.3d 1312, 1321 (10th Cir. 2004) .........................................................11

*Versarge v. Township of Clinton,*
   984 F.2d 1359 (3d Cir. 1993) ......................................................................10

**Rules**

F. R. Civ. P. 12(b)(6) ........................................................................................19

F. R. Civ. P. 15 .................................................................................................19

F. R. Civ. P. 56(a) ..............................................................................................8

## INTRODUCTION

Plaintiff Jason Robinson, an African-American male, is a former employee of Defendant Triple R Janitorial, Inc., a minority-owned custodial services contractor.  In September 2014, an African-American Triple R manager hired Mr. Robinson directly into a floor technician job instead of an entry-level janitorial position.  But three months into his employment, Mr. Robinson asked Triple R to demote him because he couldn't get along with his direct supervisor.  His hiring manager approved this request.

But Mr. Robinson's working relationship with his new supervisor was no better.  His issues with her culminated in May of 2015, when she observed Mr. Robinson sitting in a car and listening to music while on the clock.  The supervisor told him to start cleaning his assigned building, but Mr. Robinson cursed at her and refused to follow her instructions.  The Triple R manager who originally hired Mr. Robinson investigated the incident, collected witness statements, and decided to terminate him.

Mr. Robinson sued Triple R, alleging race discrimination.  While his complaint is not clear, Mr. Robinson seems to allege that Triple R paid him the incorrect wage rate and discriminated against him because of his race and his sex.  The record does not support Mr. Robinson's allegation that Triple R violated the law in any respect.  Triple R paid Mr. Robinson the proper wage rate.  He admits that he was never subjected to racial or sexual harassment.  And Triple R terminated him for a lawful, legitimate, and non-discriminatory reason.  Triple R is entitled to summary judgment on all counts.

## STATEMENT OF UNDISPUTED FACTS

### A.    Background Facts

1.    Defendant Triple R Janitorial, Inc. is a minority-owned Oklahoma corporation.  (See Robinson Dep. Transcript, excerpts at **Exhibit 1**, at 30:1-3).

2.    Triple R provides custodial services to businesses and government entities across the country, including the United States government.  (See Declaration of Lorenzo Henderson, attached as **Exhibit 2**, at ¶ 3).

3.    At all times relevant to this lawsuit, Triple R serviced a custodial services contract to clean and maintain various facilities at Fort Sill, a massive United States Army post located in Lawton, Oklahoma.  (**Ex. 2** at ¶ 4).

4.    All Triple R "janitorial staff including floor technicians" at Fort Sill were part of a bargaining unit represented by the International Union of Operating Engineers, Local 351 (the "Union").  (See Triple R / Union CBA, attached as **Exhibit 3**, at 4). Triple R and the Union were parties to a collective bargaining agreement ("CBA") between February 1, 2014 and September 30, 2015.  (**Ex. 3** at 1).

5.    This CBA defined Triple R's employee wages and health and welfare contribution rates.  (**Ex. 3** at 10, 29).  The CBA also contains a comprehensive grievance provision ending with binding arbitration.  (**Ex. 3** at 17-18).

6.    The CBA's grievance provision defines a "grievance" as follows:

[A] dispute, difference, disagreement, or complaint between the parties related to wages, hours, and conditions of employment.  A grievance shall include, but is not limited to the complaint of an employee, Company, or of the Union which involves the interpretation, application of, or compliance with the provisions of this [CBA].

2

(**Ex. 3** at 17).

7.      Triple R is an Equal Opportunity Employer and enforces both an EEO policy and an anti-harassment policy.   (See Triple R Code of Conduct, attached as **Exhibit 4**, at §§ 3.1, 3.2).

8.      Triple R's founder and owner is Renardo Rhone, an African-American male.  (Robinson Dep. at 30:4-6).  Triple R's Operations Manager is Lorenzo Henderson, who is also an African-American male.  (**Ex. 2** at ¶ 2).

**B.      The Plaintiff's Employment with the Defendant**

9.      The Plaintiff, Jason Robinson, is an African-American male.

10.      Mr. Robinson submitted an employment application with Triple R Janitorial on September 29, 2014.  (See Robinson Employment Application, attached as **Exhibit 5**).   Mr. Robinson submitted his application at the same time as Cheyenne Garner, an African-American female.   (See October 2014 Race and Gender Report, attached as **Exhibit 6**; Robinson Dep. at 31:15-17).  As Mr. Robinson indicated on his application, he applied for work as a "janitor."  (**Ex. 5** at 2).

11.      Mr. Robinson and Ms. Garner initially presented their employment applications to Jennifer Kelley, who was then Triple R's Alternate Project Manager at Fort Sill.  (Robinson Dep. at 31:17-21).  Mr. Robinson told Ms. Kelley that he knew how to clean floors.  Clarice Jackson, who was then Triple R's Fort Sill Project Manager, overheard this comment.  (Robinson Dep. at 32:4-12).  Ms. Jackson told Mr. Robinson that Triple R had a vacant floor technician position and hired him "right on the spot." (Robinson Dep. at 32:13-17; 33:16-20).

3

**12.**     Mr. Robinson was the "only person" hired directly as a floor technician. Triple R usually promoted janitors to this position.  (Robinson Dep. at 33:9-14).

**13.**     Both Ms. Jackson and Ms. Kelley are African-American females. (Robinson Dep. at 31:11-12; 56:7-8).

**14.**     As a floor technician, Mr. Robinson was entitled to a higher rate of pay than a janitorial employee under the terms of the CBA.  (**Ex. 3** at 29).  As indicated by Triple R's pay records, Mr. Robinson was initially paid $11.68 per hour plus an additional $3.81 per hour as a health and welfare contribution for a total loaded hourly wage rate of $15.49 per hour.  (See 9/24/14-10/7/14 Hour and Wage Record, attached as **Exhibit 7**).  This rate was consistent with the rate specified in the CBA.  (**Ex. 3** at 1).

**15.**     In his role as a floor technician, Mr. Robinson was responsible for prepping, sealing, waxing, and buffing the floors of various buildings at Fort Sill. (Robinson Dep. at 40:18-25; 41:1).   When Mr. Robinson held his floor technician position, his direct supervisor was Marlon Morman.  (Robinson Dep. at 43:24-25; 44:1).

**16.**     Mr. Morman is an African-American male.  (Robinson Dep. at 11:16-17).

**17.**     In late December 2014 or early January 2015, Mr. Robinson asked Ms. Jackson to demote him to a janitorial position.  (Robinson Dep. at 44:22-25; 46:7-13).

**18.**     Mr. Robinson asked Ms. Jackson to demote him to a janitor position because Mr. Morman allegedly harassed him.  (Robinson Dep. at 10:7-16; 46:11).

**19.**     In response to Mr. Robinson's complaints about working with Mr. Morman, Ms. Jackson told him "[O]kay, no problem," and assigned Mr. Robinson the janitorial position as he requested.  (Robinson Dep. at 46:12-13).

**20.**    As a janitor, Mr. Robinson's hourly wage decreased to $10.10 per hour, with an additional $4.02 per hour health and welfare contribution.[1]  (See 12/24/14-1/7/15 Hour and Wage Record, attached as **Exhibit 8**).  Mr. Robinson's new direct supervisor was Alternate Project Manager Jennifer Kelly.  (Robinson Dep. at 53:4-7).

**21.**    Shortly after his demotion, Mr. Robinson complained to Ms. Jackson that Ms. Kelley was harassing him.  (Robinson Dep. at 82:4-5; 83:22-25).  Mr. Robinson claimed that Ms. Kelley subjected him to "constant bitching and complaining about anything.  And it didn't even have to pertain to work."  (Robinson Dep. at 81:21-23).

**22.**    Mr. Robinson asked Ms. Jackson to "tell [Ms. Kelley] to leave me alone." (Robinson Dep. at 84:8-9).   Mr. Robinson admits that Ms. Jackson "probably did something, because [Ms. Kelley] will be nice a little bit."  (Robinson Dep. at 84:10-11).

**23.**    Mr. Robinson remained in his janitor position until he was terminated.  (See 4/24/15-5/7/15 Hour and Wage Report, attached as **Exhibit 9**).

**24.**    Although Mr. Robinson alleges that he carried a sheet of cleaning instructions called a "lead book," Mr. Robinson was never classified as a "lead" janitorial employee because he cleaned "leadless" buildings.  (Robinson Dep. at 64:24-25; 65:1). Mr. Robinson was not paid a lead janitorial wage premium.  (Robinson Dep. at 72:2-4).

**25.**    Mr. Robinson never complained about his wages.  (Robinson Dep. at 39: 18-23).

---

[1] In early October, Triple R voluntarily raised hourly employees' wages (including Mr. Robinson's) in response to Executive Order 13658, requiring all federal contractors to pay employees at least $10.10 per hour.  (**Ex. 2** at ¶¶ 11-12).

**26.**     Additionally, Mr. Robinson never filed a grievance (through his Union or in his individual capacity) against Triple R alleging that his wage rate was incorrect or alleging harassment by any Triple R manager or employee.  (Robinson Dep. at 93:14-21).

**C.     Mr. Robinson's Discipline and Termination**

**27.**     On May 7, 2015, Ms. Jackson suspended Mr. Robinson for one day for signing out from his shift without finishing his route or telling anyone.  (See 5/8/15 Suspension Notice, attached as **Exhibit 10**).  Mr. Robinson responded with defiance, telling her that "it was not his job" to inform Ms. Kelley that his route was not completed and that "he does not get paid to do this."  (**Ex. 10**).

**28.**     Mr. Robinson was involved in a more serious matter on Wednesday, May 27, 2015, after Mr. Robinson contacted Ms. Kelley to inform her that he needed additional cleaning supplies to finish performing his duties in Building 4100.  (Robinson Dep. at 110:13-17).  This building is also referred to as the Fort Sill Annex.

**29.**     Ms. Kelley and another Triple R employee, Teresa Goolsby, drove a Triple R van to Mr. Robinson's location.  (Robinson Dep. at 120:4-6; also see May 27 Kelley and Goolsby Statements, attached as **Exhibits 11** and **12**).  As they approached Building 4100, Ms. Kelley and Ms. Goolsby observed Mr. Robinson sitting in his personal vehicle listening to music.  (Robinson Dep. at 111:9-11; **Ex. 11** at 1; **Ex. 12**).

**30.**     Ms. Kelley approached Mr. Robinson's vehicle and asked why he wasn't inside cleaning Building 4100 as directed.  (Robinson Dep. at 113:12-13; **Ex. 11** at 1; **Ex. 12**).  Mr. Robinson told Ms. Kelley that an Army officer ordered him to wait in his vehicle, ostensibly because of security order called FP COM BRAVO.  (Robinson Dep.

at 113:13; **Ex. 11** at 2; **Ex. 12**).  Ms. Kelley told him to go inside and clean the building with Triple R employee Rachel Moore.  (**Ex. 11** at 2; **Ex. 12**).

31.     Mr. Robinson shouted and directed profanities toward Ms. Kelley, refusing her instructions to return to work.  (**Ex. 11** at 2-3; **Ex. 12**).  Mr. Robinson admitted that he may have raised his voice during this confrontation.  (Robinson Dep. at 120:14-17).

32.     Ms. Kelley called Ms. Jackson, who was working in Triple R's office.  (Robinson Dep. at 121:16-19; **Ex. 11** at 2).  Ms. Jackson told Ms. Kelley to send Mr. Robinson home for the day.  (Robinson Dep. at 121:10-13; **Ex. 11** at 4).  Ms. Kelley told Mr. Robinson to give back the supplies and go home.  (**Ex. 11** at 4).

33.     Mr. Robinson threw a bag of cleaning supplies on the ground, within sight and earshot of base personnel before leaving in his truck.  (**Ex. 11** at 4; **Ex. 12**).

34.     Ms. Jackson asked Ms. Kelley and Ms. Goolsby to prepare written statements documenting Mr. Robinson's outburst, and they did so.  (**Ex. 11**; **Ex. 12**).  After discussing next steps with Ms. Jackson, Ms. Kelley prepared a Personnel Action Form describing the incident and terminating Mr. Robinson for "insubordination" and "improper conduct."  (See 5/27/15 Termination Notice, attached as **Exhibit 13**).

35.     Ms. Jackson reviewed the statements and prepared an Employment Termination Form later that day.  (See Employment Termination Form, attached as **Exhibit 14**).  The next day, on May 28, 2015, Ms. Jackson called Mr. Robinson to inform him that he was terminated.  (Robinson Dep. at 123:12-14).

36.     Mr. Robinson never grieved his termination, nor did his Union.  (Robinson Dep. at 93:14-21).

**D.**     **Mr. Robinson's EEOC Charge and Federal Lawsuit**

**37.**     Mr. Robinson filed an EEOC charge on June 29, 2015, alleging that he was "repeatedly subjected to objectionable and offensive treatment by Jennifer Kelley," that Ms. Jackson "made no effort to correct any of the conditions of employment," and that Triple R "cut [his] pay by $2.00" when he "transferred to another Team."  (See EEOC Charge, attached as **Exhibit 15**).

**38.**     Mr. Robinson also alleged that he was discharged from his position "by Ms. Jackson, allegedly for sitting in a vehicle."  (**Ex. 15**).

**39.**     Finally, Mr. Robinson claimed that he was assigned "lead duties to perform" in March of 2015, but was "not compensated with any lead pay."  (**Ex. 15**).

**40.**     Mr. Robinson claimed that he had been subjected to each of these alleged adverse actions "because of my race, Black, and sex, Male."  (**Ex. 15**).

**41.**     After receiving Triple R's position statement, the EEOC issued a Dismissal on September 16, 2015 because it was "unable to conclude that the information obtained establishes violations of the statutes."  (See EEOC Dismissal, attached as **Exhibit 16**).

**42.**     Mr. Robinson filed his Complaint on November 6, 2015.  [Dkt. 1].

## LEGAL STANDARD

After considering the pleadings, the discovery materials, and any affidavits, summary judgment should be granted if there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  F. R. Civ. P. 56(a).  As this Court stated in *Powell v. Nunley,* 682 F. Supp. 2d 1260, 1263 (W.D. Okla. 2010):

The court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *In re Wal-Mart Stores, Inc.*, 395 F.3d 1177, 1189 (10th Cir. 2005). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. *L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000).

Summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Where the nonmoving party bears the burden of proof at trial, as the plaintiff does in this case, he cannot rely on his pleadings to defeat summary judgment; instead, he must put forth evidence sufficient to create a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Nevertheless, the moving party must demonstrate its entitlement to judgment as a matter of law.

## ARGUMENT

**A.    Plaintiff has abandoned all claims except two – a claim that he was discriminatorily denied lead pay because of his race or his sex, and a claim that he was harassed by his supervisors.**

Mr. Robinson's Complaint appears to allege that he was suspended, terminated, and denied lead pay on the basis of his race.  [Dkt. 1 at ¶¶ 7-9].  But in his deposition he abandoned his termination claim and replaced it with a harassment claim:

Q:  Okay.  So in terms of the claims in the lawsuit… one is that you weren't paid for your lead work?

A:  Yes.

Q:  And you believe that was based on your race, because there was a white male who came in after you, who was paid for that work?

A:  Yes, sir.

Q:  And the second one is this harassment from Marlon [Morman]?

A:  Yes, sir.

9

Q:  Are there any other claims that you are raising in the lawsuit?

A:  No, there's not.

(Robinson Dep. at 15:6-21) (emphasis added).  Mr. Robinson affirmatively stressed his lawsuit includes no other claims three separate, additional times during his deposition. (Robinson Dep. at 9:12-25; 10:1-9; 72:7-25; 162:17-25; 163:1-6).  As such, he has abandoned his termination claim.  *See, e.g., Buenrostro v. Potter,* 176 Fed. Appx. 828 (9th Cir. 2006) (holding that discrimination claims "fail[ed]" where plaintiff "conceded" them in deposition); *Ross v. Jefferson County Dep't of Health,* 701 F.3d 655, 661 (11th Cir. 2012); *Versarge v. Township of Clinton,* 984 F.2d 1359 (3d Cir. 1993) (plaintiff abandoned claims in deposition); *Chatfield v. Shilling Constr. Co.,* 1999 U.S. Dist. LEXIS 10134, at *1 fn. 1 (D. Kan. June 24, 1999) (attached as **Exhibit 17**).  The only claims that remain against Triple R are (1) race discrimination for failing to pay a "lead" janitor's wage rate and (2) workplace harassment from Mr. Morman and Ms. Kelley.

**B.      Defendant is entitled to summary judgment on Plaintiff's disparate wage payment claim because he has not established a prima facie case and because he cannot show pretext.**

Mr. Robinson alleges that he performed the work of a "lead" janitorial employee but was not paid the contractual lead janitor wage premium, and claims that Triple R withheld this premium because of his race or sex in violation of Title VII.  Mr. Robinson intends to prove this claim through indirect evidence only:

Q:  Okay.  What evidence do you have to support your contention that you were denied lead pay based on your gender?

A:  Visual.

Q:  Okay.  And explain that to me, please?

A:  I don't see no black male that at that time, with me, with a lead book that's a lead.  All I see is wom[e]n and one white man.  That's – so my visual.

(Robinson Dep. at 103:21-15; 104:1-4).

Indirect evidence Title VII cases are analyzed under the *McDonnell Douglas* standard.  To survive summary judgment, a plaintiff must first present evidence sufficient to prove a *prima facie* case.  *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1191 (10th Cir. 2000).  If the plaintiff succeeds, the burden shifts to the employer to "articulate legitimate, non-discriminatory reasons for the contested action." *Sandoval v. Boulder Reg'l Communs. Ctr.,* 388 F.3d 1312, 1321 (10th Cir. 2004).  If the employer carries its burden, "the plaintiff can withstand a summary judgment motion and is entitled to go to trial" if he or she "presents evidence that the defendant's proffered reason for the employment decision was pretextual – i.e. unworthy of belief."  *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1230 (10th Cir. 2000).

1. **Plaintiff has not outlined a prima facie case that is legally sufficient to prove that Defendant denied him lead pay because of his race or sex.**

To prove his *prima facie* case, Mr. Robinson must prove:  (i) he belongs to a protected class; (ii) he suffered an adverse employment action; and (iii) this adverse action was taken under circumstances giving rise to an inference of discrimination. *Barlow v. C. R. England, Inc.,* 703 F.3d 497, 505 (10th Cir. 2012); *also see Andrews v. Cent. Parking Sys.,* 2009 U.S. Dist. LEXIS 115707, at *30-31 (Colo. D. Dec. 11, 2009) (attached as **Exhibit 18**) (applying similar elements in disparate pay context).

i. Plaintiff cannot prove the first prong of his *prima facie* case for his sex discrimination claim.

As a male plaintiff, Mr. Robinson faces a heightened burden with respect to the first element of his sex discrimination claim.  In *Notari v. Denver Water Dep't,* 971 F.2d 585, 588 (10th Cir. 1992), the Tenth Circuit acknowledged that "Title VII's protection is not limited to those individuals who are members of historically or socially disfavored groups," but also held that:

> The *McDonnell Douglas* presumption – that is, the presumption that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision – is valid for a reverse discrimination claimant <u>only when the requisite background circumstances exist</u>… [A] plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, <u>must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.</u>

*Notari v. Denver Water Dep't,* 971 F.2d at 589 (emphasis added).  Thus, as in *Notari*, a male plaintiff must either demonstrate background circumstances or prove "a reasonable probability that but for the plaintiff's status the challenged employment decision would have favored the plaintiff," to carry his *prima facie* burden.  *Id.,* at 590.  *See also Adamson v. Multi Cmty. Diversified Servs.,* 514 F.3d 1136 (10th Cir. 2008) (holding that male sex discrimination plaintiffs must meet a "heightened standard").

Mr. Robinson cannot meet this standard because he produced "not a whit of statistical or even anecdotal evidence that men suffered adverse treatment as a class in the workplace." *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d at 1201 (10th Cir. 2006).  The record proves that Triple R's owner and Operations Manager are male, Mr. Robinson's first supervisor was male, and many Triple R employees are male.  (**Ex. 5**). Mr. Robinson also cannot show that he would have received lead pay "but for" his sex

because he admits that Ms. Garner – a <u>female</u> co-worker – also received no lead pay when cleaning the same buildings he did.  (Robinson Dep. at 58:24-25; 59:1-20).

> ii.   <u>Plaintiff cannot prove the second prong of his *prima facie* case for either his race or sex discrimination claims.</u>

Mr. Robinson has failed to show that Triple R subjected him to an "adverse employment action" by denying him lead wages.  The Tenth Circuit has held that an employer's conduct "must be materially adverse to the employee's job status" to constitute an adverse employment action, and such an action must "constitute a significant change in employment status." *Hill v. Steven Motors, Inc.,* 97 Fed. Appx. 267, 278 (10th Cir. 2004) (internal quotations and citations omitted).  The wages Triple R paid Mr. Robinson were not "materially adverse" to his job status because he requested a demotion to a janitor position (<u>not</u> a lead janitor position) and he was never directed to clean buildings requiring a lead janitor.   (Robinson Dep. at 64:25; 65:1; 71:9-15).  Furthermore, Mr. Robinson's wages never changed after he began receiving janitor wages.  Triple R paid Mr. Robinson the wages to which he was entitled for the position he requested, and this cannot constitute an adverse employment action under Title VII.

> iii.   <u>Plaintiff cannot prove the third prong of his *prima facie* case for either his race or sex discrimination claims.</u>

 "Plaintiffs can establish evidence of [circumstances creating an inference of discrimination] in various ways, such as actions or remarks made by decision-makers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to plaintiff's termination." *Barlow v. C. R. England, Inc.,* 703 F.3d at 505 (10th Cir. 2012).   Mr. Robinson's pay discrimination

claim relies entirely on his comparison to an unidentified white male named "A.J."[2] to create the inference that Triple R withheld lead wages from Mr. Robinson because of his race or sex.   To support this theory, Mr. Robinson claims that Triple R hired A.J. in December of 2014 or January of 2015, and claims A.J. was asked to perform lead work and was given lead pay.  (Robinson Dep. at 74:5-10; 75:15-25).  But these allegations are not based on any evidence in the record or otherwise.  Mr. Robinson is unable to identify A.J.'s given name or surname, and Triple R's employment records do not show any white male employee for whom those initials may refer.  Mr. Robinson cannot carry his *prima facie* burden by citing to an individual he knows nearly nothing about, especially when the record contains no evidence that this person is a current or former Triple R employee.

Mr. Robinson also cannot perfect the comparison between A.J. and himself. During his deposition, Mr. Robinson admitted he does not know and cannot prove that A.J. ever received lead pay:

> Q:  How much was A.J. getting paid?
>
> A:  I don't know.  I looked it up later, I seen that he was getting paid as lead, well, was going to get paid – well.
>
> Q:  Okay.  You say you looked it up later?
>
> A:  Yeah, I mean, I looked everybody that was a lead got paid more, except for me.  So I'm pretty sure that he got his pay, I'm pretty sure.  Once I get the paperwork then I can know for sure.

---

[2] When asked if he supported his race discrimination claim with evidence other than A.J., he responded:  "No.  Cause other than that – yeah, I didn't – I didn't bother – I didn't look into it deeper when I could have seen something else, but yeah.   Correct." (Robinson Dep. at 80:8-16).

(Robinson Dep. at 76:18-25; 77:1).   Mr. Robinson has never submitted any discovery requests to Triple R or Triple R's counsel, nor has he made any other informal request for proof of A.J.'s hours worked, duties performed, or wage rates paid.

Moreover, even if he could prove that A.J. was a Triple R employee who received lead janitor wages, Mr. Robinson cannot prove that he and A.J. were similarly situated.   This is fatal to his claim, because "at summary judgment, the court must determine whether plaintiff has adduced enough evidence to support a finding that the other employee and plaintiff were sufficiently similarly situated to support an inference of discrimination." *Riggs v. Airtran Airways, Inc.,* 497 F.3d 1108, 1117 (10th Cir. 2007). Mr. Robinson has offered no evidence proving that he and A.J. shared a supervisor, cleaned the same buildings, or even performed the same "lead duties."   Without more, Mr. Robinson's comparison between A.J. and himself is not probative.

Finally, the record proves that several Triple R lead janitors who worked at the same time as Mr. Robinson were African-American males.   (Robinson Dep. at 95-96).   The record also proves that Triple R compensated at least three of these lead janitors with lead pay, including RC Cathey, Oliver Dorsey, and Henry Johnson.   (10/8/14-10/23/14 Hour and Wage Record, attached as **Exhibit 19**; **Ex. 8**).   Because each of these three employees belong to the same protected categories as Mr. Robinson but received the benefit he claims he was denied, these facts cut against any inference that Triple R denied lead pay to Mr. Robinson because of his race or sex.

15

**2.      Even if Plaintiff could prove his prima facie case, Defendant asserted a lawful, non-discriminatory reason that it denied him lead pay.**

In his deposition, Mr. Robinson testified that Triple R refused to pay either a lead wage premium to him or Ms. Garner despite the fact that he and Ms. Garner carried "lead books" when cleaning certain buildings.  (Robinson Dep. at 59:1-2 and 21:25; 60:1-6).  But in fact Mr. Robinson and Ms. Garner received no lead pay because they did not perform all lead janitor duties in their buildings.  Not all janitors who carry a lead book are entitled to lead pay.  (**Ex. 2** at ¶ 7).  Further, Mr. Robinson cleaned only "leadless" buildings.  (**Ex. 2** at ¶ 8).  Accordingly, his wages were determined by the nature of his work assignments, not his race or his sex.  Triple R's legitimate, non-discriminatory explanation satisfies its burden, and it should survive summary judgment.

The record shows that Mr. Robinson was aware of this explanation while he was still a Triple R employee.  Although Mr. Robinson never complained to Triple R's management about his wages prior to filing this lawsuit, he claimed that Ms. Garner called Lorenzo Henderson to discuss her "missing" wage premium when cleaning the "twin towers," a pair of buildings allegedly cleaned by Mr. Robinson.  (Robinson Dep. at 59:6-8).  Allegedly, Mr. Henderson told Ms. Garner (during a speakerphone conversation that Mr. Robinson claims he overheard) that holding the lead book didn't entitle her to lead pay because she – like Mr. Robinson – was assigned to clean "leadless" buildings.  (Robinson Dep. at 59:13-19).  Further, Mr. Robinson claims that Mr. Henderson told Ms. Garner that the "leadless" classification for the towers came directly from Ms. Jackson.  (Robinson Dep. at 100:13-19).

16

### 3. Plaintiff cannot produce evidence that the Defendant's reason for denying him lead pay is pretext concealing an unlawful reason.

Faced with Triple R's legitimate, non-discriminatory explanation for his wage rate, Mr. Robinson must prove it was pretext concealing an unlawful reason in order to survive summary judgment. To establish pretext, Mr. Robinson must produce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo v. Blue Cross & Blue Shield of Kan.,* 452 F.3d 1193, 1203 (10th Cir. 2006).

Mr. Robinson's burden to prove pretext is especially heavy in this case because he was hired, denied lead pay, suspended, and terminated by the same person. In *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1183 (10th Cir. 2006), the Tenth Circuit joined "nearly every [other] circuit" in recognizing the "same actor inference" in Title VII cases. Under the "same actor inference," a plaintiff faces "a strong inference that the employer's stated reason" for taking an adverse action "is not pretextual" and that "no discriminatory animus motivated the employer's actions" if the same person, aware of the plaintiff's membership in certain protected categories, both hired and took the allegedly adverse action against the plaintiff "within a relatively short time span." *Id.*

Mr. Robinson admits that Ms. Jackson hired him "right on the spot" into a floor technician position. (Robinson Dep. at 32:14). He also admits that Ms. Jackson reassigned him to a janitor position upon his request. (Robinson Dep. at 46:12). Also, he

claims that Ms. Jackson determined that Mr. Robinson and Ms. Garner were cleaning "leadless" buildings. (Robinson Dep. at 100:17-18). It belies belief that Ms. Jackson would hire a black male into one position with a high hourly wage only to deny him a lower wage rate mere months later because of his race or sex.

Triple R also enjoys the benefit of a second legal presumption because Ms. Jackson and many other members of Triple R's management are also African-American. In similar circumstances, the Tenth Circuit has held that a plaintiff's suggestion of pretext is "undermine[d]" when both the decision-maker and plaintiff belong to the same protected class. *Estate of Bassatt v. Sch. Dist. No. 1,* 775 F.3d 1233, 1233 (10th Cir. 2014); *see also Kendrick v. Penske Transp. Servs.,* 1999 U.S. Dist. LEXIS 9918 (D. Kan. Apr. 13, 1999) (attached as **Exhibit 20**). In *Almon v. Goodyear Tire & Rubber Co.,* 2009 U.S. Dist. LEXIS 44169, at *18-19 (D. Kan. May 20, 2009) (attached as **Exhibit 21**), the Court explained that under this presumption "proof that the decisionmaker is the same race as the plaintiff considerably undermines the probability that race was a negative factor in the employment decision" and "weaken[s]" inferences of discrimination.

Notwithstanding these legal presumptions, Mr. Robinson cannot prove pretext given the record's facts. Mr. Robinson admitted in his deposition that this claim was speculative; he "really [didn't] know what it is" that caused Triple R to deny him lead pay. (Robinson Dep. at 100:11). Also, as noted above, Mr. Robinson testified during his deposition that Triple R withheld lead pay "because they don't want to pay us," suggesting that Triple R's "leadless" classification was lawful pretext to save costs, not unlawful pretext covering discriminatory animus. (Robinson Dep. at 60:1-6).

18

4.     **Plaintiff failed to exhaust available contractual remedies regarding his allegation that Defendant denied Plaintiff lead premium pay.**

[F]ederal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress… [U]nless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf.

*Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652-653 (1965).   The CBA between

Triple R and the Union contains a grievance procedure providing for binding arbitration.

(**Ex. 2** at 17-18).   But Mr. Robinson never grieved his wages even though they are

controlled by the CBA.   (Robinson Dep. at 93:14-21).   Accordingly, he failed to exhaust

applicable procedural remedies, entitling Triple R to summary judgment over any

contractual claim.   See *Milton v. Scrivner, Inc.*, 901 F. Supp. 1541 (W.D. Okla. 1994)

(dismissing plaintiff's claims under CBA due to his failure to file grievance).

C.     **Plaintiff's harassment claim[3] fails as a matter of law because he explicitly admits that the alleged harassment was not based on either his race or his sex.**

For a plaintiff's Title VII harassment claim to survive summary judgment,

that plaintiff must prove that the conduct towards him was (1) unwelcome, (2) based

upon his sex or his race, and (3) sufficiently severe or pervasive as to alter the conditions

of his employment and create an abusive working environment.   *See Harrison v. Eddy*

*Potash, Inc.,* 248 F.3d 1014, 1022 (10th Cir. 2001).   The second element is crucial –

---

[3] Mr. Robinson's Complaint does not allege unlawful harassment against Triple R. Instead, Mr. Robinson introduced this claim for the first time at his deposition. (Robinson Dep. at 9:24-25; 10:1-20).   Mr. Robinson never amended his Complaint to add the claim, and he cannot timely amend now under F. R. Civ. P. 15 or the Court's Scheduling Order.   [Dkt. 20].   This Court may alternatively dismiss Mr. Robinson's harassment claim because the Complaint fails to state a claim.   *See* F. R. Civ. P. 12(b)(6).

"[g]eneral harassment if not racial or sexual is not actionable." *Bolden v. PRI, Inc.,* 43 F.3d 545, 551 (10th Cir. 1994). "Title VII… does not set forth a general civility code." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

In his deposition, Mr. Robinson explained his objections to Mr. Morman and Ms. Kelley's respective management styles. (Robinson Dep. at 11:18-25; 12:12-18; 14:13-23; 40:19-22; 41:5-13). But Mr. Robinson denied that either Mr. Morman or Ms. Kelley ever subjected him to a hostile work environment on the basis of his race or any other protected category. (Robinson Dep. at 11-14; 82:23-25; 83:1-8). For example, Mr. Robinson testified that:

> I know I wasn't talked to like a human being the majority of the time…
> But then I can't even really say that because, I mean, he [Mr. Morman]
> cussed out everybody on the crew. He talked trash to everybody. Jennifer
> [Kelley] talked trash to everybody. So, I mean, I can't really say, oh, it's
> because you [are] black, they just talked down to everybody.

(Robinson Dep. at 41:11-19).

When asked about his working relationship with Mr. Morman specifically, Mr. Robinson overtly denied that Mr. Morman's alleged harassment carried racial or sexual overtones. (Robinson Dep. at 11-14). Mr. Robinson's harassment claim against Ms. Kelley fares no better:

> Q:  So in terms of harassment that Ms. Kelley did to you, you're not
> claiming that it's based on race, because you're both African-American?
>
> A:  No.  No.
>
> Q:  She just wasn't nice to you?
>
> A:  No.  She just wasn't – I – I don't know if hers – <u>the only thing that
> really where I'm saying race was just due to the fact of pay</u>.  You see what

I'm saying?  That's it.  Nothing else was on the – cause it's majority black people there.

(Robinson Dep. at 82:23-25; 83:1-8) (emphasis added).

Even assuming - as this Court must for the purposes of evaluating this motion for summary judgment - that Mr. Morman and Ms. Kelley actually treated him exactly as described in his deposition, Mr. Robinson's harassment claim is deficient as a matter of law.  The above admissions prove that Triple R was not "permeated with discriminatory intimidation, ridicule, and insult" directed at Mr. Robinson on the basis of his race or sex, and "the run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."  *Moriss v. City of Colo. Springs,* 666 F.3d 654, 663-664 (10th Cir. 2012) (internal quotes and citations omitted).  Triple R is entitled to summary judgment.

**D.     Although Plaintiff has abandoned his claims that he was suspended or terminated because of his race or sex, Defendant is also entitled to judgment on these claims because Plaintiff cannot demonstrate discriminatory pretext.**

Mr. Robinson has affirmatively abandoned his claims that he was suspended and terminated because of his race or sex.  Even if the Court considers its merits, Triple R is entitled to summary judgment because he cannot rely "merely on allegations or denials in [his] own pleading" to defeat summary judgment and has otherwise failed to support the claim with evidence.  *Franke v. ARUP Labs, Inc.,* 390 Fed. Appx. 822, 826 (10th Cir. 2010); *also see Cooks v. Potter,* 109 Fed. Appx. 810, 812 (7th Cir. 2004) ("even if [plaintiff] did not abandon" her claims through "concession" in deposition, she "did not present evidence sufficient to create a material issue of fact").

Mr. Robinson has presented no evidence either of a *prima facie* case or pretext[4] that could support this claim.   Triple R suspended Mr. Robinson on May 27, 2015 and terminated him one day later because he refused to follow his supervisor Ms. Kelley's instructions and shouted obscenities at her within earshot of Fort Sill personnel. (**Exs. 13**; **14**).   These reasons for discharge are corroborated by contemporaneous written statements.   (**Exs. 11**; **12**).   Mr. Robinson also admitted during his deposition that he defied Ms. Kelley's orders.   (Robinson Dep. at 113:12-17; 114:5-15).

## CONCLUSION

For these reasons, Triple R Janitorial respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

MILLER JOHNSON
Attorneys for Defendant

Date:  August 12, 2016          By:  */s/ Andrew A. Cascini*
                                        Anthony R. Comden (P44958)
                                        Andrew A. Cascini (P76640)
                                        45 Ottawa Avenue, S.W., Suite 1100
                                        Grand Rapids, MI  49503
                                        616.831.1700
                                        comdent@millerjohnson.com
                                        cascinia@millerjohnson.com

---

[4] Mr. Robinson must overcome the "same actor" inference, the "same class" presumption, and the increased *prima facie* burden for this claim.  See Section B.1.

22

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 12, 2016 the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. first class mail for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Date:  August 12, 2016                         By:  */s/  Andrew A. Cascini*
                                                        Anthony R. Comden (P44958)
                                                        Andrew A. Cascini (P76640)
                                                        Business Address:
                                                        MILLER JOHNSON
                                                        45 Ottawa Avenue, S.W., Suite 1100
                                                        Grand Rapids, Michigan  49503
                                                        616.831.1700
                                                        comdent@millerjohnson.com
                                                        cascinia@millerjohnson.com

23